Caldwell, C. J.
The first question in the ease arises on a motion to dismiss the appeal. Were this a case at law, there would be a diversity of opinion among the judges upon the motion; but we all agree that the case being in chancery, the appeal is well taken. We defer, however, expressing our views until a ease at law, which is now pending before us, and in which a similar motion has been made, shall come up for decision.
The controversy arises in reference to an assignment of a stock of goods, made by the defendant, David D. Tomlinson, to the defendants, William Dunn and John Barry.
The evidence shows that Tomlinson had been for some time engaged in merchandise in the town of Morristown. Dunn and Barry had been his sureties on divers promissory notes, some of which were held by individuals, others by banks, amounting in all to $1300. On the 3d of October, 1849, Dunn and Barry, having become alarmed as to the pecuniary situation of Tomlinson (it having been reported in the neighborhood that he was about to fail) met Tomlinson in St. Clairsville on his way from Wheeling, where-he had been making a purchase of goods, and requested him to give them a bill of sale of his store to secure them against their liability for him. Tomlinson consented, and they went to the office of an attorney to have the writings drawn. Their attorney advised them that it was better for Tomlinson to make an absolute sale of the goods to Dunn and Barry. The attorney says that Tomlinson did make to Dunn and Barry an absolute and unconditional sale of the goods. He says, however, that the agreement was that Dunn and Barry were to sell the goods and collect the accounts as speedily as possible, and- pay off the debts for which they were liable; and if any balance should remain, it was to be paid over to Tomlinson.
*Dunn and Barry took possession of the goods; an inventory was taken, which amounted to over $1500. Two horses and a wagon and some other articles were also delivered over to Dunn. *206 and Barry under the same agreement. Dunn, on the 5th of October, 1849, three days after the assignment, accepted an order drawn by Tomlinson in favor of McLellan, Knox & Co., who were also creditors of Tomlinson, for $180, said order to be paid by Dunn out of any balance that might remain after the payment of the claims for which Dunn and Barry were liable. The property and goods thus assigned have been sold, and, after deducting the expenses of sale, the amount is not equal to the claim of Dunn and Barry.
This assignment appears to have embraced all the property of Tomlinson. The complainants are creditors of Tomlinson, and they charge in their bill that the assignment was fraudulent, and that it was also intended to prefer one class of creditors to the exclusion of others. The defendants, in their answer, deny all fraud, and claim that they took the assignment in good faith for their owni security and protection.
Without going into a detail of the' evidence, we would merely say that, so far as the question of fraud is concerned, we do not see that any actual fraud was intended. The evidence shows that at the time the property and goods were delivered to Dunn and Barry, Tomlinson was insolvent; that, in view of this insolvency, Dunn and Barry were very anxious to secure themselves, by getting security on his property; that their protection in this way was the sole object of the arrangement, and that they took no means to interfere with the rights of other creditors than were necessary to effect that object.
It is contended, on the part of the defendants, that the transfer of the property amounted to an absolute sale. This appears to ■have been the opinion of the attorney under whose directions the contract was completed. His own evidence, however, as well as that of all the other witnesses, *shows clearly that the sale was a conditional one. Dunn and Barry were mortgagees in possession, with power to sell, and apply the proceeds to the payment of their claim. They had to account, for any balance that might remain, to Tomlinson ; this required an account to be rendered of the entire proceeds of the property, that is altogether inconsistent with their being in any sense the absolute owners of it.
This brings us to the main question in the case, which is, Does this case fall within the provisions of the statute of 1838, relating to assignments by debtors, in view of insolvency, to trustees ? If it does come within that statute, then the complainants, as well as *207 the other creditors, have a right to a pro rata distribution of the fund arising from the sale of this property; if not, then they have no such right, but Dunn and Barry are entitled to have their claim paid in full out of the fund. For it is to be observed that it is only by force of statute law that any objection can be taken to an insolvent’s paying off a portion of his debts, or securing one or more of his creditors, although such payment, or the giving of such security, will enable one class of creditors to obtain an advantage over another. We have always had a statute in this state making all contracts void that were made for the purpose of defrauding, delaying, or hindering creditors; and, such contracts have always been void at common law, without any statutory enactment. But even under the statute of 1835, which enacted that all assignments of property hereafter made by debtors to trustees in consideration of insolvency, and with design to secure one class of creditors and defraud others, should inure to the benefit of all the creditors, it was held, in the case of Hull v. Jeffrey, 8 Ohio, 290, that the right to prefer one creditor to another still existed, provided the assignment was made in good faith. And we believe that it has been universally held, in the absence of any statutory provision to the contrary, that voluntary assignments, made bona fide by debtors to trustees for the benefit of creditors, will be supported, though preference is given to part of the creditors, *in exclusion of the rest. United States’ Digest, -258, and the cases there cited.
The statute of 1838 has changed the general rule of law on this subject, not by declaring such assignments void, but by directing that property thus assigned shall inure to the benefit of all the creditors, without reference to the preference provided for in the assignment; and this, although the assignment may have been made in good faith.
That statute provides, “ That all assignments of property in trust which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors, to the exclusion of others, shall be held to inure to the benefit of all the creditors, in proportion to their respective demands.” Swan’s Stat. 717.
Does this statute, then, apply to the case of a creditor taking a mortgage or other security for his debt on the property of his insolvent debtor? On the part of complainants, it is contended that it does, and we are referred to the case of Mitchell v. Gazzam, 12 *208 Ohio, 315, as a decision in point. That decision, we are bound to admit, sustains the proposition, which leaves the single question for consideration, whether the decision is in accordance with law. In the first place, we would say, that the language of the statute of 1838 would not strictly apply to a case like the present, that of a creditor taking an assignment of property to secure a debt of his own ; where that is the sole object of the transaction, and where the relation of mortgagor and mortgagee is created between the parties. The language of the statute is very explicit, and its operation limited by a number of descriptive and qualifying terms. It must be a conveyance in trust, which is made to trustees, with the design to prefer one or more creditors, to the exclusion of others, etc. Now, this is not the language by which we would expect any one, either in common or legal parlance, to describe the fact of a creditor-taking security from his debtor. The language here would certainly be a very awkward mode of expressing such a transaction. If the legislature had ^intended to bring such transactions within the statute, they would certainly have expressed it by providing, in addition, that all securities given in view of insolvency should come within its provisions. But the transaction described in this statute is one that conveys to the mind a very definite idea, wholly distinct from the fact that the person to whom the conveyance is made is a creditor.
The court, in the case of Hall v. Jeffrey, to which we have before referred, in speaking of the statutes of 1835, and this statute, speak of the evil that this legislation was intended to prevent. They say: “During the commercial embarrassment a few years since, debtors, in view of insolvency, adopted the plan of assignments to-trustees, either to create inconvenient embarrassments upon pursuit of debts, or to preserve their property from a compulsory sale, or-to impose terms upon creditors, or to secure some other profitable result to themselves. Examples of these practices may be found in 6 Ohio, 293 ; 7 Ohio, pt. 2, 246.” The court further say, after-referring to the provisions of the statutes of 1835 and 1838, conveyances, other than those made to trustees, are not affected by either statute. Making an assignment to trustees to pay debts is. one thing ; securing a debt is another and a very different thing. But it is said in Mitchell v. Gazzam, 12 Ohio, 335, that the object of the statute of 1838 was to cut off preferences by debtors in failing or insolvent circumstances of favored creditors, and to secure *209 a fair distribution to all the creditors, in proportion to their respective demands, and that the statute would be liberally construed to effect that object.
Now, it might be very desirable to have the effects of an insolvent debtor divided amongst his creditors fro rata, without permitting any preference or advantage to be obtained amongst them. But we think the statute falls very far short of effecting or attempting to effect that object. To accomplish this, it would be necessary, after the fact of insolvency existed, to prevent the debtor from making a sale of his property in payment of a debt; to prevent a creditor from taking advantage of a judgment by execution; or from taking a judgment by confession; to prevent the debtor from selling his.property and paying off any of his debts; in all these ways the equal distribution of a debtor’s effects may be prevented as effectually as by securing a debt by an assignment of property to the creditor. And yet no one has ever contended that the statute ever applied to any of the above cases. Indeed, since the decision of Mitchell v. Gazzam, it has been a very common practice, in place of taking security on the property of a failing debtor, to have the debtor confess a judgment, and upon execution appropriate his property to the payment of such judgment. If the legislature intended, by the statute of 1838, to insure an equal distribution of the effects of an insolvent debtor amongst his creditors, under the most liberal construction that can be given to it they have fallen far short of effecting that object. Now, it may be said that a mortgagee is in some respects a trustee; but this arises merely as an incident to his relation as mortgagee, and is not the kind of trustee-designated in the statute. We suppose that the legislature, as the language imports, intended to provide for a case where a trustee is interposed, with the controlling intent on the part of the debtor, of giving one creditor an advantage over another, and that the statute does not apply to the case of a creditor 'seeking and obtaining, in good faith, a lien on the property of his insolvent debtor for the sole pui’pose of securing his debt. So far as the case-of Mitchell v. Gazzam holds differently, that decision is not sustained by law.
Now, in the present case, the.defendants were the sureties of Tomlinson ; they took an assignment of about enough property to pay off their liabilities for him; .and, although they showed themselves very anxious to obtain the security, as all men would be *210 under similar circumstances, yet securing themselves appears to have been their sole object; and we think they had a legal right to do it.
This doctrine is expressly laid down in the case of Fassett v. Traber, 20 Ohio, 540; and in Doremus v. O’Harra, ante 45. The bill will be dismissed.

Sill dismissed.